**POIALIʻI PUSA PUNI and SEEPA POIALIʻI, on behalf of themselves and the POIALIʻI FAMILY, Plaintiffs,**

**v.**

**MANUMA TUI and AGNES TUI, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 18-04

November 5, 2004

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs, Marie A. Lafaele
For Defendants, Arthur Ripley, Jr.

ORDER DENYING APPLICATION FOR PRELIMINARY
INJUNCTION AND CONTINUING OTHER INTERIM ORDERS

On June 18, 2004, Plaintiffs Poiali`i Pusa Puni ("Poiali`i") and Seepa Poiali`i ("Seepa") commenced this action for injunctive relief to enjoin Defendants Manuma Tui ("Manuma") and Agnes Tui ("Agnes") (together "the Tuis") from completing the construction of their house on the Poiali`i Family's communal land "Lealatele" in Pago Pago, to void the separation agreement facilitating the construction, and to engage in and refrain from certain related acts.

Plaintiffs' application for a preliminary injunction was first heard on July 1, 2004. Seepa and her counsel were present. The Tuis appeared *pro se.* The Court received testimony and, pursuant to A.S.C.A. § 43.0304, issued an interim order. In accordance with the jurisdictional requirements of A.S.C.A. § 43.0302 in communal land cases, further proceedings were suspended, except for additional appropriate interim orders, until the Secretary of Samoan Affairs mediated the controversy and issued a certificate of irreconcilable dispute. We also enjoined the Tuis from further construction until it was determined whether the

construction violated the stipulated agreement of January 21, 2003, settling *Haleck v. Tufono*, LT No. 01-02, and from interfering with Poiali`i and Seepa's agents on the construction site to determine any violation of the agreement. Poiali`i and Seepa were also directed to complete the violation determination work with deliberate speed and then have a hearing scheduled for further appropriate interim orders. Finally, we enjoined the parties from harassing, annoying, or otherwise disturbing the peace of each other.

On September 1, 2004, Poiali`i and Seepa renewed their application for a preliminary injunction. The hearing was held on September 21 and 22, 2004. Present were Seepa and her counsel and the Tuis and their counsel. On September 22, after the evidentiary hearing, we inspected the construction site. Having now considered the evidence, we deny the application for a preliminary injunction.

## Preliminary Injunction Criteria

A preliminary injunction is properly issued when "(1) there is a substantial likelihood that the applicant will prevail at trial on the merits and that a permanent injunction will be issued against the opposing party; and (2) great or irreparable injury will result to the applicant before a full and final trial can be fairly held on whether a permanent injunction should issue." A.S.C.A. § 43.1301(j).

## Discussion

This action is a sequel to *Haleck v. Tufono*, LT No. 01-02. We take judicial notice of *Haleck*, which arose out of a contested separation agreement originally signed by Poiali`i family members other than Poiali`i, the family's *sa`o*, in the Tuis' favor. The separation would have converted the Tuis' house on a portion of the family's communal land "Lealatele" into their personal property, pursuant to A.S.C.A. §§ 37.1501-.1505. At the time, the Tuis were living in an existing house and planned to construct a new house on the land. The new house is at the center of the present controversy.

Until the present action, *Haleck* was the last of a series of actions in this Court, probate, civil, and criminal in nature, stemming from deep-seated inter-family animosity between the Tuis on one side of the family and Seepa and her family members on the other side of the family, especially when they were neighbors residing in the house immediately adjacent to the Tuis' house. Seepa was the principal resident of the adjacent house during and after the *Haleck* proceedings until it essentially destroyed by fire in December, 2002. Only remnants remain.

During the *Haleck* proceedings, Poiali`i, as the *sa`o*, tried to mediate the family's differences. Generally, however, and in his role as a party plaintiff in this action, he has been ostensibly aligned with Seepa's side of the family. He was also then, and is now, significantly incapacitated by ill-health and unable to vigorously tackle resolution of these family problems.

This Court patiently encouraged the parties to settle the *Haleck* dispute and eventually they did. Pursuant to the settlement agreement, dated and filed on January 21, 2003, the Court approved a new separation agreement signed by Poaili`i, replacing the one at issue, directed its recording with the Territorial Registrar. Under the settlement, the Tuis were permitted to build a new house at the site of their existing house with the condition that:

> the foundation of the new structure shall be limited to and remain the same as the existing house; it shall not be extended beyond the current foot-print of the existing house, except that the new structure's foundation can be extended toward the back of the lot, to the rock-wall and not beyond the rock-wall. The new house can be a two-story or multi-level structure.

*Haleck*, LT No. 01-02, Stipulation to Dismiss, at 2. Extension of the new house towards the rear portion of land was a contentious issue in *Haleck*.

The Tuis obtained the required permits to construct the new house in April 2003. They began construction in May 2003, and by June 18, 2004, when this action was filed, the new structure was 75% to 80% completed. Interior work principally remained unfinished. Tufono Ionatana ("Tufono"), a lesser Poaili`i *matai* and a signer of the *Haleck* settlement agreement, hired the carpenter and work crew, and being a licensed building tradesman, generally oversaw the construction on the Tuis' behalf. He has usually supported the Tuis during the inter-family disputes.

The new house is a two-story structure. The outer portions of the rear wall and foundation are placed directly on top of the rock wall now removed from this area. The new foundation does not go beyond the site of the old rock wall and cannot be said to be inconsistent with the agreement as worded.

The walls on both sides of the new building are situated outside of the old walls. There were concreted areas beyond the old side walls, which previously served as walkways. The new foundation covers these concreted areas. The effect of the relocated wall on the side next to the burned down adjacent house is particularly significant. The two old houses were already close together, separated by no more than

approximately eight to twelve feet at the widest point. The space is now narrowed to approximately four to eight feet at the widest point. Perhaps, a new house at the adjacent house site could be built further apart from the Tuis' new house, but it was already close to the boundary on that side of the land. The proximity of the old buildings with each other already created a congested situation. Tufono testified, however, without contradiction, persuasive or otherwise, that the external concreted areas were actually integral parts of the old foundation providing lateral support for the walls of the old house. Thus, he maintained the new foundation and walls were within the old foundation footprint.

The front of the new house appears to be, for the most part, substantially the same distance as the old foundation from the public road along the land. However, there is a significant difference at the corner nearest the old adjacent house in actuality. The Tuis had a makeshift carport at this location, a concrete pad with a roof of canvas or some similar material. This area is now included in the new foundation. The pad was probably added as an afterthought to existing house, but in any event, Tufono viewed it as an essential adjunct to the original old foundation.

### I. Great or irreparable injury

■ Balancing the equities on the great or irreparable injury criterion for issuing a preliminary injunction is appropriate in this kind of situation. *See Asifoa v. Lualemana*, 17 A.S.R.2d 10, 13 (App. Div. 1990).

The new construction, in net effect, is substantially larger than the Tuis' old house. The new structure clearly dominates the land across the front side of the property, all the more so in appearance with a second story. It could be readily said that while the Tuis may have lost previous judicial battles, or at least did not gain their apparent objective of securing use of the entire land by only members of their side of the Poaili`i family, they have now won the war. Arguably, it is now impractical to suitably rebuild the burned down house on or even nearly on its previous site. Based on these circumstances, Seepa and members of her side of the family, accustomed to living at the burned down house site, have immediately suffered great or irreparable injury before the trial on the merits can be heard.

On the other hand, the Tuis have rebuilt their house at considerable expense, without significant opposition until the construction was substantially completed, and at least within the letter if not entirely within the spirit of the parties' agreement in LT No. 01-02. They will also immediately sustain great or irreparable injury if they are required to modify any of the construction of their new house or are even prohibited from completing a house until the trial on the merits.

We consider the equitable balance between the respective immediate injury to both sides to be a wash except when taking into account the criterion for issuing a preliminary injunction of substantial likelihood of prevailing on the merits on issuance of a permanent injunction. This is the key preliminary injunction issue in this case.

## II. Substantial likelihood of success on the merits

■ The doctrine of laches is applicable in ruling on a request for a preliminary injunction. *See, e.g., Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 995 F. Supp. 490, 502 (D.N.J. 1998).

■ Seepa and Poiali`i, if Seepa or other family members had kept him fully informed, knew, or should have known, that the Tuis had embarked on constructing their new house in May 2003. The foundation for the new house was completed in less than a month's time, and any basis for believing that the Tuis had violated the LT No. 01-02 agreement was then evident on even cursory inspection. However, Seepa and Poiali`i commenced this action approximately one year later when the Tuis' new house was 75% to 80% completed. Under these circumstances, Seepa and Poali`i are guilty of laches. Their shortsighted and inordinate delay in bringing this action overrides any basis for finding any substantial likelihood of their attaining a permanent injunction at the trial on the merits for purposes of instituting the requested preliminary injunction.

## Order

1. Seepa and Poiali`i's application for a preliminary injunction is denied. The Court's interim bench order of July 1, 2004, preventing the Tuis from either doing or authorizing others to do any further work on their new house is dissolved.

2. The Court's interim bench order of July 1, 2004, mutual enjoining the parties, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from harassing, annoying, or otherwise disturbing the peace of each other remains in full force and effect.

3. Likewise, the Court's interim bench order of July 1, 2004, enjoining the Tuis, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from preventing or obstructing Seepa, Poiali`i, or their authorized agents from inspecting the Tuis' new house site for the purpose of ascertaining in preparation for proceedings in this action whether the new house has been built in violation of the settlement agreement of January 21, 2003, in LT No. 01-02 also remains in full force and effect.

4. The parties are reminded that, as required under A.S.C.A. § 43.0302, further proceedings, except for necessary or appropriate interim orders, are suspended in accordance with the Court's bench order of July 1, 2004, pending the conclusion of mediation proceedings before the Secretary of Samoan Affairs and the Secretary's issuance of a jurisdictional certificate of irreconcilable dispute.

It is so ordered.